IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Rehabilitation & Community Providers Association; Cori's Place, Inc.; Scott Howard Schwartz by and through Linda Schwartz and Karen Newman, CO Guardians, Ryan Brett by and through his Guardian Francis Brett; Danielle DeCarlo by and through Daniel DeCarlo and Mary Jean DeCarlo, CO Guardians; and Maya Ester Saadoun through Elisabeth and Fabrice Saadoun, CO Guardians, Petitioners | : : : : : : : : : : : : : : : | |
| | : | No. 564 M.D. 2022 |
| v. | : : | Argued: December 4, 2023 |
| Department of Human Services, Office of Developmental Programs, Respondent | : : : : : | |

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE LORI A. DUMAS, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE DUMAS                                           FILED: January 26, 2024

The Pennsylvania Department of Human Services, Office of Developmental Programs (DHS), filed preliminary objections to the petition for review filed by Rehabilitation & Community Providers Association (Rehab Association), Cori's Place, Inc., Scott Howard Schwartz by and through Linda Schwartz and Karen Newman (co-guardians), Ryan Brett by and through his guardian Francis Brett, Danielle DeCarlo by and through Daniel DeCarlo and Mary

Jean DeCarlo (co-guardians), and Maya Ester Saadoun through Elisabeth and Fabrice Saadoun (co-guardians) (collectively, Petitioners).[1] DHS asserts, *inter alia*, that Cori's Place and Rehab Association failed to exhaust their administrative remedies, and that Petitioners, including Individual Petitioners, lack standing. We sustain DHS's first, second, and fifth preliminary objections, dismiss as moot DHS's remaining preliminary objections, and dismiss Petitioners' petition for review.

## I. BACKGROUND[2]

Because we write for the parties, we do not detail the background.[3] Briefly, in February 2022, DHS published two notices announcing the fees it would reimburse organizations providing certain services to autistic and other developmentally disabled individuals.[4] *See* Pet. for Review ¶ 32 (citing 52 Pa. B.

---

[1] We collectively refer to the four individuals as Individual Petitioners.

[2] "[W]e accept as true all well-pleaded material facts set forth in the petition for review and all inferences fairly deducible from those facts." *Robinson Twp. v. Commonwealth*, 83 A.3d 901, 917 (Pa. 2013) (*Robinson*) (cleaned up). We may also consider documents or exhibits attached to the petition for review. *Diess v. Pa. Dep't of Transp.*, 935 A.2d 895, 903 (Pa. Cmwlth. 2007). We may reject "conclusions of law or argumentative allegations." *Small v. Horn*, 722 A.2d 664, 668 (Pa. 1998) (citation omitted). We may also cite directly to the Pennsylvania Bulletin notices that were attached to Petitioners' petition for review.

[3] *See generally Rehab & Cmty. Providers Ass'n v. Dep't of Hum. Servs. Off. of Developmental Programs*, 283 A.3d 260, 262 (Pa. 2022) (*Rehab I*) (resolving Rehab's similar challenge for community services); *see also* DHS's Br. at 28 (asserting the instant case is "nearly identical"). *Cf.* Pet. for Review (Pa. Cmwlth., No. 543 M.D. 2019, filed Sept. 27, 2019).

[4] The first bulletin lists various adult autism services and the amount that DHS would reimburse the providers for those listed services. 52 Pa. B. 1326 (2022). The bulletin states that the fees would be effective July 1, 2021, *i.e.*, prior to the bulletin's publication. *Id.* The second bulletin lists other similar services and the fees that would be in effect on various dates throughout 2022. 52 Pa. B. 1328 (2022). The second bulletin also discusses certain fees that would be in effect six months after a federal public health emergency expired. *Id.*; *see also* DHS's Br. at 24 n.5 (stating that DHS "no longer intends to implement the" announced fees that would apply after the expiration of a public health emergency and would "instead continue to use" the fees previously announced in a prior bulletin (citing 53 Pa. B. 2902 (2023))). To recap, the second bulletin includes (1) fees that are currently in effect, and (2) fees that would have been in effect (but for 53 Pa. B. 2902) six months after expiration of a federal public health emergency. The federal health emergency expired on May 11, 2023. DHS's Br. at 24-25. Thus, but for DHS's subsequent

2

1326, 1328 (2022)); *accord* Exs. 1-2 to Pet. for Review.

Petitioners filed the instant petition for review raising two claims. First, Petitioners request (1) a declaratory judgment that DHS's new fees are unlawful and (2) injunctive relief. Pet. for Review, at 38-39 (citing the Declaratory Judgments Act, 42 Pa.C.S. §§ 7531-7541). Specifically, Petitioners request an injunction prohibiting DHS from implementing the new fees and requiring DHS to "properly redetermine [fees] in compliance with state and federal law." *Id.* Second, Petitioners seek the identical relief as a separate claim invoking equity. *Id.* at 39.

In support of their claims, Petitioners allege DHS supervises and funds certain organizations that provide services to developmentally disabled individuals. *Id.* ¶ 14. As noted above, in February 2022, DHS published two Pennsylvania Bulletin notices revising the fees that DHS would pay for such services. *Id.* ¶ 32. In Petitioners' view, the new fees are "unsustainable" and "will result in the curtailment of essential services." *See, e.g.*, *id.* ¶ 67.[5]

Petitioners reason that DHS has a "mandatory obligation to provide adequate mental health and intellectual disability funding" under the Mental Health and Intellectual Disability Act of 1966.[6] *Id.* ¶ 70. Per Petitioners, "the Commonwealth must discharge its funding duty" by complying with 55 Pa. Code § 6100.571, which obligates DHS to establish "fee schedule rates," *i.e.*, the fees that DHS will pay for services. *Id.* ¶ 71. Petitioners allege that because DHS "failed to gather sufficient or valid data on the provider costs," DHS violated its duty under 55

---

announcement cancelling the new fees for "community participation support services, *see* 53 Pa. B. 2902 (2023), those fees would have become effective around November 11, 2023. *See* 52 Pa. B. 1328 (2022).

[5] Petitioners identified various services, the alleged costs for providing such services by "efficient and economically run . . . providers," and DHS's new fees. *See, e.g.*, Pet. for Review ¶¶ 66-68.

[6] Act of October 20, 1966, Special Sess. No. 3, P.L. 96, *as amended*, 50 P.S. §§ 4101-4704.

Pa. Code § 6100.571.[7]  *Id.* ¶¶ 72, 79-91.

For example, Petitioners reason that the February 2022 revised fees did not account for or failed to sufficiently account for, among other factors, inflation and overtime.  *Id.* ¶¶ 73-74.  Further, they maintain that DHS arbitrarily "capped administrative costs" at 10%.  *Id.* ¶ 75.  Petitioners claim that DHS "creatively used" various assumptions to decrease the fees.  *Id.* ¶ 76.  As a result, Petitioners maintain that Individual Petitioners (1) are unable to find a willing provider or (2) face the "uncertainty" of losing currently provided services because their providers cannot afford to render such services under the revised fee schedule.  *Id.* ¶ 79.  For these reasons, Petitioners request declaratory judgment and injunctive relief.[8]  *Id.* at 38-39

---

[7] Section 6100.571(a) states that DHS "will establish fee schedule rates, based on the factors in subsection (b), using a market-based approach so that payments are consistent with efficiency, economy and quality of care and sufficient to enlist enough providers so that services are available to at least the extent that such services are available to the general population in the geographic area."  55 Pa. Code § 6100.571(a).  Subsection (b) lists ten factors DHS would use to calculate the fees.  *Id.* § 6100.571(b).  For example, one factor is the "cost of implementing applicable Federal and State statutes and regulations and local ordinances."  *Id.* § 6100.571(b)(9).  Petitioners, somewhat summarily, allege DHS violated all ten Section 6100.571(b) factors.

[8] In addition, Petitioners allege that DHS violated a federal requirement that Pennsylvania "publish public notice of any significant proposed changes" in the fees.  Pet. for Review ¶ 92.  Petitioners contend that under both 55 Pa. Code § 6100.571, and the Administrative Agency Law, 2 Pa.C.S. §§ 501-508, 701-704, DHS must comply with 42 U.S.C. § 1396a(a)(13)(A) (Section 13(A)) of the federal Medicaid Act, 42 U.S.C. §§ 1396 to 1396w-7.  *Id.* ¶ 93.  Per Petitioners, Section 13(A) obligates DHS to "engage in a public process for determining [fees and] interested parties are given reasonable opportunity to comment" before DHS publishes the final fees.  *Id.* ¶ 92 (cleaned up).  Petitioners conclude that because DHS did not comply with 55 Pa. Code § 6100.571, DHS necessarily violated Section 13(A).  *Id.* ¶ 94.

Petitioners similarly allege that DHS violated 42 U.S.C. § 1396n(c).  *Id.* ¶¶ 99-100; *see also Rehab I*, 283 A.3d at 262 (explaining Section 1396n further).  By way of background, Petitioners assert that under Section 1396n(c), the Centers for Medicare & Medicaid Services, an agency of the United States Department of Health and Human Services, had to approve amendments to Pennsylvania's Medicaid plan. Pet. for Review ¶ 98.  Petitioners maintain "that the Commonwealth dictated" that DHS revise its fees to conform to an arbitrary $400 million cap.  *Id.* ¶ 101.  Per Petitioners, (1) the arbitrary figure, (2) DHS's failure to submit its fee revision methodology to the federal agency for approval, and (3) DHS's revision methodology violated Section 1396n(c).  *Id.*

(prayers for relief).

Although invoking this Court's equitable jurisdiction for declaratory and injunctive relief, Petitioners acknowledge that organizations that provide such services "have an administrative remedy available in the form of an appeal to" DHS's Bureau of Hearings and Appeals (BHA). *Id.* ¶ 3.[9] Petitioners claim that "small providers" of services cannot afford the cost of administrative litigation, which in their view means "the administrative remedy is inadequate." *Id.* ¶ 4. For example, Petitioners specifically identify Cori's Place as a smaller provider that had to withdraw its BHA appeal regarding DHS's 2019-2020 fees. *Id.* ¶ 8.[10] Because Petitioners allege the inadequacy of any administrative remedy, they filed the instant lawsuit. *Id.* ¶¶ 3, 8.

In response, DHS filed nine preliminary objections. Prelim. Objs., 2/2/23. First, DHS contends that we should decline to exercise our "original jurisdiction"[11] because Cori's Place failed to exhaust its administrative remedies. *Id.*

¶¶ 102, 106-08. Unlike *Rehab I*, however, Petitioners do not claim the revised fees are unconstitutional.

[9] We acknowledge Petitioners' contention that the "unlawful nature" of the fees "negatively impacted BHA's ability to render timely adjudication of provider reimbursement appeals such that the BHA administrative remedy is no longer adequate under law." Pet. for Review ¶ 3. Petitioners, however, did not address this contention in their brief in opposition to DHS's preliminary objections. In any event, our Supreme Court rejected Petitioners' contention. *Rehab I*, 283 A.3d at 271 (holding that because an administrative remedy existed, the petitioners could not invoke this Court's equitable jurisdiction "solely on the basis that it may reach a more expeditious resolution" (citation omitted)).

[10] Cori's Place does not raise any similar allegation for the February 2022 revised fees, *i.e.*, it appealed the fees to the BHA but lacked sufficient resources to maintain its appeal.

[11] Our Supreme Court explained that "the requirement of administrative exhaustion is a judge-made rule and does not pertain to the existence of subject matter jurisdiction, but to whether such jurisdiction is properly exercised." *Beattie v. Allegheny Cnty.*, 907 A.2d 519, 526 n.5 (Pa. 2006). Subsequently, our Supreme Court clarified that a party must "exhaust all the adequate and available administrative remedies" before invoking this Court's equitable jurisdiction. *Glenn Hawbaker, Inc. v. Dep't of Transp.*, 304 A.3d 1067, 1081 (Pa. 2023) (*Hawbaker*) (cleaned up); *Rehab I*, 283 A.3d at 262. Thus, it would be more accurate to construe DHS's contention as a challenge

at 1. Second, and somewhat similarly, DHS raises the same contention as to Rehab Association "because its members have an available administrative remedy." *Id.* at 3. Third, DHS asserts that Petitioners' claims lack sufficient specificity that would permit DHS "to determine which [fees Petitioners] are challenging." *Id.* at 4. Fourth, DHS maintains this Court lacks jurisdiction because the claims are unripe. *Id.* at 7. Fifth, DHS challenges Individual Petitioners' standing because they have not alleged any immediate harm or cannot be harmed by any change in fees. *Id.* at 8-10. Sixth, DHS disputes whether Rehab Association "has standing in its own right" or "as a representative of its members." *Id.* at 10-13. Seventh, DHS raises a demurrer because the methodology it used to revise the fees does not violate federal law. *Id.* at 13-14. Eighth, DHS states a general demurrer that Petitioners have no "privately enforceable right to challenge" DHS's "administration of a program that operates under a waiver granted by the Federal government." *Id.* at 15. Ninth, DHS raises a demurrer that Petitioners failed to allege all "the elements necessary for injunctive relief."[12] *Id.* at 16. Petitioners filed a responsive pleading.

## II. ISSUES

In support of its preliminary objections, DHS raises nine issues, corresponding to its nine preliminary objections although presented in a different

___

to this Court's equitable—not original—jurisdiction.

[12] DHS's preliminary objections did not always cite to the Rules of Civil Procedure. *See* Pa.R.A.P. 1517. We construe DHS's first and second preliminary objections as invoking a "failure to exercise or exhaust a statutory remedy." Pa.R.Civ.P. 1028(a)(7). Similarly, we construe DHS's fifth preliminary objection, *i.e.*, standing, as a lack of capacity to sue under Pa.R.Civ.P. 1028(a)(5). *C.G. v. J.H.*, 172 A.3d 43, 54 (Pa. Super. 2017). Although "standing issues sometimes can turn on pure questions of law, they more commonly turn on questions of fact," and in the latter circumstance, Pa.R.Civ.P. 1028(c)(2) governs. *Id.* (cleaned up); *see Rehab I*, 283 A.3d at 272 n.19; *Citizens Against Gambling Subsidies, Inc. v. Pa. Gaming Control Bd.*, 916 A.2d 624, 627 (Pa. 2007) (*Citizens*). Rule 1028(c)(2) provides that if "an issue of fact is raised, the court shall consider evidence by depositions or otherwise." Pa.R.Civ.P. 1028(c)(2). We may conditionally cite to Superior Court decisions. *Pa. State Police v. Madden*, 284 A.3d 272, 278 n.13 (Pa. Cmwlth. 2022).

order.  DHS's Br. at i-ii.

## III. DISCUSSION[13]

### A. First and Second Preliminary Objections -
### Cori's Place and Rehab Association

We begin with DHS's arguments in support of their initial two preliminary objections: the failure of Cori's Place and Rehab Association to exhaust their administrative remedies.  *Id.* at 25-31.  In support, DHS argues that before seeking judicial relief, Cori's Place and Rehab Association must initially "exhaust all adequate and available administrative remedies." *Id.* at 25.  DHS states that under 55 Pa. Code § 6100.41, an aggrieved provider of services may appeal to BHA.  *Id.* at 26 (discussing *Rehab I*); *see also* Pet. for Review ¶¶ 3 (acknowledging administrative remedy), 8.  DHS maintains those petitioners cannot sidestep the exhaustion doctrine by including a claim for declaratory or injunctive relief unless the remedy was inadequate.  DHS's Br. at 26-27.  To that end, DHS asserts that Cori's Place and Rehab Association have an adequate administrative remedy.  *Id.* at 28.

Per DHS, Cori's Place and Rehab Association contend that the administrative remedy is inadequate for two reasons.  *Id.*  First, the administrative process is too long.  *Id.*  Second, the administrative process is too expensive.  *Id.* at 29.  DHS maintains that the *Rehab I* Court rejected both arguments as a basis for an inadequate administrative remedy.  *Id.*  DHS relatedly reasons that Rehab Association cannot invoke this Court's "original jurisdiction" because Rehab Association's claims are identical to its members' claims and its members have not

---

[13] Generally, "a court must decide whether it is clear from the well-pleaded facts and reasonable inferences from those facts that the claimant has not established a right to relief." *Yocum v. Pa. Gaming Control Bd.*, 161 A.3d 228, 233-34 (Pa. 2017) (cleaned up).  "A court considering a preliminary objection may take evidence and create a factual record, but it need not do so if it has sufficient information to rule on the objection." *Rehab I*, 283 A.3d at 271 (cleaned up) (holding this Court acted within its discretion by not holding an evidentiary hearing because of the availability of an adequate agency factfinding process); *see also* Pa.R.Civ.P. 1028(c)(2).

yet exhausted their administrative remedies. *Id.* at 30-31.[14]

As an initial matter, it is "fundamental that prior to resorting to judicial remedies, litigants must exhaust all the adequate and available administrative remedies which the legislature has provided." *Hawbaker*, 304 A.3d at 1081 (cleaned up); 1 Pa.C.S. § 1504 (requiring pursuit of statutory remedies over common law). "Under the exhaustion requirement, a party must pursue the administrative remedies [it] has against an agency before challenging [the agency's] action in court." *Del. Valley Convalescent Ctr. v. Beal*, 412 A.2d 514, 515 (Pa. 1980) (cleaned up).[15] The

[14] Although DHS does not directly challenge the absence of a constitutional challenge in Petitioners' petition for review, DHS has consistently maintained that Petitioners failed to invoke this Court's equitable jurisdiction properly. *See* Prelim. Objs. at 2-3; DHS's Br. at 28; *see also Hawbaker*, 304 A.3d at 1081.

Petitioners counter that their purported failure to exhaust administrative remedies is a prudential—and not a jurisdictional—issue. Pet'rs' Br. at 9 n.3, 22-24 (contending that the Declaratory Judgments Act supersedes the "judge-made prudential doctrine of exhaustion of administrative remedies"). Building on that premise, Petitioners contend they have properly invoked this Court's equitable jurisdiction under the Declaratory Judgments Act. *Id.* at 12.

Petitioners frame DHS's exhaustion argument as a contention "that if all [Rehab Association] members have an administrative remedy, and if [Rehab Association's] association standing is derived solely from these providers, [Rehab Association] lacks association standing." *Id.* at 14 (emphases omitted). Petitioners disagree with that contention, reasoning that at this procedural stage, this Court must accept as true Petitioners' factual averments that Rehab Association "is a heterogeneous state association" with members that (1) "do not receive reimbursement under the [fees] at issue" and (2) are harmed by the "unlawful" fees. *Id.*; *accord id.* at 25 (asserting that "determination of whether a party failed to exhaust an administrative remedy, as a matter of fact, requires the development of a factual record"), 27. In Petitioners' view, Rehab Association has standing because of its relationship to county government entities that have "statutory responsibilities to provide care and services" to intellectually disabled persons. *Id.* at 9, 12-13. By extension, Petitioners reason they have standing under the Declaratory Judgments Act. *Id.* at 14-21. As for DHS's argument about the cost of pursuing administrative relief, Petitioners maintain "there is no authority holding that litigation expense cannot be used to determine whether an administrative remedy is adequate." *Id.* at 25 (emphasis omitted).

[15] In defining "party," if an individual party has an administrative remedy and that party is also a member of an association, then that association cannot bring an identical claim. *Pa. Ass'n of State Mental Hosp. Physicians v. Dep't of Corr.*, 520 A.2d 909, 913 (Pa. Cmwlth. 1987) (*Physicians*). In *Physicians*, an association sued an agency challenging the "improper furlough" of four of the association's members. *Id.* at 912. The *Physicians* Court pointed out that the four

*Beal* Court explained that the doctrine promotes judicial efficiency because if the party prevails before the agency, then a court may not need to intervene. *Beal*, 412 A.2d at 516; *accord Hawbaker*, 304 A.3d at 1081. The doctrine also permits the agency (1) an "opportunity to develop an adequate factual record," (2) to exercise its expertise, particularly in technical subjects, and (3) to promote "the development of a cohesive body of law in that area." *Shenango Valley Osteopathic Hosp. v. Dep't of Health*, 451 A.2d 434, 438 (Pa. 1982) (*Shenango*).[16]

A party, however, need not exhaust its administrative remedies and may attempt to invoke this Court's equitable jurisdiction under the Declaratory Judgments Act subject to two conditions. *Hawbaker*, 304 A.3d at 1083 n.17; *Commonwealth ex rel. Nicholas v. Pa. Lab. Rels. Bd.*, 681 A.2d 157, 161 (Pa. 1996). A party must show "both a substantial question of constitutionality *and* the absence of an adequate statutory remedy." *Nicholas*, 681 A.2d at 161 (emphasis in original and cleaned up).[17]

---

members had an administrative remedy. *Id.* at 912-13. The association countered that "it has an interest, independent" of its members in challenging the agency's furlough. *Id.* at 913. The *Physicians* Court disagreed, reasoning that the association "lacks standing to substitute itself for specific members having individual" administrative remedies. *Id.* Any benefit that the association would have "derives primarily from the relief granted to the individual" members. *Id.* Because those four members were pursuing their administrative remedies, this Court declined to exercise its equitable jurisdiction before the agency completed "its essential factfinding and analytical functions . . . ." *Id.*

[16] "Exhaustion is concerned with agency autonomy." *Merriam v. Phila. Historical Comm'n*, 777 A.2d 1212, 1219 (Pa. Cmwlth. 2001) (cleaned up); *accord Bayada Nurses, Inc. v. Dep't of Lab. & Indus.*, 8 A.3d 866, 875 (Pa. 2010). In contrast, although similar to exhaustion "in that they both deal with timing of judicial review," ripeness is a distinct concept. *Merriam*, 777 A.2d at 1219 (citation omitted). In the administrative law context, ripeness "arises out of a judicial concern not to become involved in abstract disagreements of administrative policies." *Id.* (cleaned up).

[17] *Accord Hawbaker*, 304 A.3d at 1083 n.17; *Beattie*, 907 A.2d at 525; *Shenango*, 451 A.2d at 438. The reason for both conditions is because "it would be a simple matter for any litigant to avoid the rulings of an administrative agency merely by challenging its authority on a constitutional basis." *Hawbaker*, 304 A.3d at 1084 (citation omitted).

In turn, a party can establish an inadequate administrative remedy "if it either (1) does not allow for adjudication of the issue raised or (2) allows irreparable harm to occur to the plaintiffs during the pursuit of the statutory remedy." *Id.* (cleaned up); *accord Hawbaker*, 304 A.3d at 1083 & n.17 (holding that "our precedent is clear that raising a substantial constitutional or validity challenge *alone* is not enough to forgo application of the exhaustion doctrine and that, in asserting such challenges, a litigant must *also* demonstrate the absence or inadequacy of an administrative remedy" (emphases added)). The *Hawbaker* Court explained that when "injunctive relief is sought," the court's "initial focus should be on the threshold question regarding whether equity jurisdiction is appropriate." *Hawbaker*, 304 A.3d at 1084 (reiterating that "equity will not intervene where there is available an adequate statutorily prescribed remedy at law is a principle well established in this Commonwealth" (cleaned up)).[18]

---

[18] Proof of irreparable harm is an element necessary for preliminary injunctive relief. *Hawbaker*, 304 A.3d at 1074. But in resolving the exhaustion doctrine, a party cannot succeed in its request for preliminary injunctive relief unless that party would suffer irreparable harm from the *statutory procedure*. *Sch. Dist. of Borough of W. Homestead v. Allegheny Cnty. Bd. of Sch. Dirs.*, 269 A.2d 904, 907 (Pa. 1970) (construing the substantially identical statutory predecessor to 1 Pa.C.S. § 1504). In *Hawbaker*, this Court granted a preliminary injunction, reasoning that "alleged violations of constitutional rights and statutory mandates constitute irreparable harm *per se*." *Hawbaker*, 304 A.3d at 1076 (cleaned up). Our Supreme Court reversed because the petitioner conceded it would "sustain no harm" during any administrative proceedings, *i.e.*, the statutory procedure. *Id.* at 1087, 1090. Plainly, the irreparable harm must flow from the statutory procedure and *not* merely from an alleged violation of a legal right. *See id.* at 1076, 1084 (noting that in *Dep't of Pub. Welfare v. Eisenberg*, 454 A.2d 513 (Pa. 1982) (plurality), this Court "erred in exercising equitable jurisdiction and awarding [preliminary] injunctive relief because the [litigant] had available legal means of redress which he did not fully pursue before resorting to equitable jurisdiction" (cleaned up)); *see also Eisenberg*, 454 A.2d at 514 n.6 (citing *Sameric Corp. of Mkt. St. v. Goss*, 295 A.2d 277, 278-79 (Pa. 1972), which resolved the propriety of a preliminary injunction). But for that critical qualification, "it would [apparently] be a simple matter for any litigant to avoid the rulings of an administrative agency merely by" alleging "violations of constitutional rights and statutory mandates," *i.e.*, the irreparable harm necessary for a preliminary injunction. *See Hawbaker*, 304 A.3d at 1076, 1084.

For example, in *Nicholas*, this Court had sustained the agency's preliminary objections and dismissed the petitioner's action because the petitioner failed to exhaust its administrative remedies. *Nicholas*, 681 A.2d at 158. Our Supreme Court reversed, reasoning that the petitioner raised both "a substantial constitutional question" *and* established the inadequacy of the administrative remedy. *Id.* at 161. Further, the agency's "fact-finding expertise" was unnecessary to resolve the constitutional issue.[19] *Id.*

In contrast to *Nicholas*, which reversed this Court, in *Beal*, our Supreme Court affirmed this Court. *Beal*, 412 A.2d at 515. *Beal*, like *Nicholas*, involved a similar procedural posture although different facts. Specifically, in *Beal*, this Court had also sustained DHS's preliminary objections based on the exhaustion doctrine. *Id.* The petitioner—a nursing home facility—appealed to our Supreme Court. *Id.*

Per *Beal*, DHS had set a "reimbursement ceiling" on fees that DHS would reimburse the facility for providing certain services. *Id.* & n.3. The facility challenged the ceiling "on the basis that it was not reasonably cost related and thus a clear violation of federal law . . . ." *Rehab I*, 283 A.3d at 270 (summarizing *Beal*). *Cf.* Pet. for Review (challenging "the legal adequacy of the new fee schedule," *see*

---

[19] Very simply, *Nicholas* resolved a complex dispute between, *inter alia*, the Pennsylvania Labor Relations Board (Labor Board) and a county. *Nicholas*, 681 A.2d at 158. The Labor Board had filed an order, which the county contended was invalid under a particular law. *Id.* at 158-59. The order at issue provided that the county could file exceptions and pursue administrative remedies. *Id.* at 159. The county, however, opted to file suit in this Court, which sustained the Labor Board's preliminary objections based on the exhaustion doctrine. *Id.*

The county appealed to our Supreme Court, arguing that the particular law at issue was unconstitutional as applied. *Id.* In reversing this Court, the *Nicholas* Court reasoned that no administrative remedies could resolve the constitutionality of the law at issue. *Id.* at 161 (stating there was "no provision in" the law at issue "granting the [Labor] Board the authority to rule on this constitutional issue" (citation omitted)). Thus, our Supreme Court concluded that because the agency could not adjudicate the constitutional issue, the county demonstrated the inadequacy of the remedy and reversed this Court. *Id.*

*Rehab I*, 283 A.3d at 269, on the basis that, *inter alia*, it violates federal law and was inadequate to reimburse the providers' costs). In the facility's view, factfinding was unnecessary because the ceiling was in "clear violation of federal law." *Beal*, 412 A.2d at 515 (cleaned up). Further, the facility argued it would be an "exercise in futility" to seek agency relief because DHS could only adjust reimbursements if the cost of services was below the ceiling. *Id.*

The *Beal* Court rejected the facility's arguments as "unpersuasive." *Id.* Specifically, our Supreme Court reasoned that the facility needed to establish that DHS's fees would not actually compensate the facility for its costs. *Id.* The *Beal* Court pointed out that there was "nothing on this record" that demonstrated that the facility's "actual costs" exceeded DHS's reimbursement ceiling. *Id.* The Court reasoned that "until it has been established, rather than presumed, that [the facility's] actual, legitimate costs exceed [DHS's reimbursement] ceiling, [the facility] poses only a conjectural, speculative claim." *Id.* Further, "nothing on this record" indicated that a DHS hearing "would *not* afford [the facility] a full opportunity to establish its actual, legitimate costs and any claimed failure to reimburse properly." *Id.* at 516 (emphasis added).[20] Thus, the *Beal* Court affirmed this Court's order that sustained DHS's preliminary objections and dismissed the facility's petition for review. *Id.* at 515.

Most recently, the *Rehab I* Court—a case raising nearly identical facts and parties as the instant case—approved of the *Beal* Court's reasoning in holding that certain providers failed to exhaust their administrative remedies. *Rehab I*, 283 A.3d at 270, 272. By way of background, in 2019, DHS had published a new list of fees in the Pennsylvania Bulletin. *Id.* at 263. Rehab Association, Schwartz, Brett,

---

[20] The *Beal* Court did not explicitly address the absence of a "substantial constitutional question." *See Nicholas*, 681 A.2d at 161.

12

and other parties filed a similar petition for review challenging "the adequacy of state funding for community participation support services, which are designed to help individuals with autism or intellectual disabilities . . . ." *Id.* at 262.

The *Rehab I* petitioners claimed, *inter alia*, that the 2019 fees "did not reflect reasonable costs relating to . . . service delivery sufficient to ensure access, encourage provider participation, and promote provider choice as required by federal law . . . ." *Id.* at 264. Plainly, the fees were insufficient. *See id.*; Pet. for Review ¶¶ 67 (challenging the fees as "unsustainable" to reimburse providers properly), 79 (contending providers cannot afford to render services under the proposed fees). The *Rehab I* petitioners sought (1) a declaration that the new list of fees was an unpromulgated regulation, and (2) injunctive relief preventing DHS "from implementing the new [fees] and directing the agency to establish [fees] sufficient to meet reasonable provider costs." *Rehab I*, 283 A.3d at 264-65. *Cf.* Pet. for Review, at 38-39 (requesting, in the prayers for relief, (1) a declaration that the new fees violate the law, and (2) an injunction preventing DHS "from implementing the [fees] at issue . . . and requiring [DHS] to properly redetermine [fees] in compliance with state and federal law").

In response, in *Rehab I*, DHS filed preliminary objections contending, *inter alia*, that certain providers failed to exhaust their administrative remedies. *Rehab I*, 283 A.3d at 265.[21] This Court sustained DHS's preliminary objection that certain providers failed to exhaust their administrative remedies but then dismissed the *entire* petition "notwithstanding that the preliminary objection in question only

---

[21] In *Rehab I*, DHS also challenged whether (1) Rehab Association, Schwartz, and Brett had standing; (2) the petitioners had a private right of action "to challenge DHS's administration of a program operating under a waiver granted by the federal government;" and (3) the petitioners alleged the elements necessary for injunctive relief. *Rehab I*, 283 A.3d at 265. *Cf.* Prelim. Objs. (objecting to (1) the standing of Rehab Association and Individual Petitioners; (2) the absence of a private right of action by Petitioners; and (3) the failure to allege the elements for an injunction).

13

pertained to the [selected providers] and not [Rehab Association] or [Schwartz and Brett]." *Id.* at 267. The aggrieved providers appealed. *Id.* at 262.

In resolving the issue, our Supreme Court began by construing the *Rehab I* petition for review. *Id.* at 269. In the *Rehab I* Court's view, the petition for review primarily averred that the Pennsylvania Bulletin notice was "an unpromulgated regulation and its provisions are inconsistent with legal mandates requiring adequate funding for the services involved." *Id.* "[A]t its core," the *Rehab I* providers "challenge[d] the legal adequacy of the new fee schedule." *Id.*[22]

Our Supreme Court next rejected the providers' argument that because they would suffer irreparable injury pursuing administrative relief, they should be able to invoke this Court's equitable jurisdiction under the Declaratory Judgments Act. *Id.* at 270. The *Rehab I* Court pointed out that the providers "had an administrative avenue to challenge the new fee schedule in accordance with" 55 Pa. Code § 6100.41. *Id.* *Cf.* Pet. for Review ¶ 3 (challenging the fee schedule enacted under 55 Pa. Code § 6100.571, which is also subject to Section 6100.41). In pursuing administrative relief, our Supreme Court noted that the providers could recover any monetary shortfall should they prevail before the BHA. *Rehab I*, 283 A.3d at 271. The *Rehab I* Court explained that because the shortfall would be temporary if the providers prevailed, the shortfall could not constitute an irreparable injury to excuse the exhaustion doctrine. *Id.* Thus, the *Rehab I* Court rejected any argument that the providers would suffer irreparable harm. *Id.* For these reasons, our Supreme Court

---

[22] In other words, the *Rehab I* Court rejected the petitioners' constitutional challenge to the DHS regulation. *Rehab I*, 283 A.3d at 269 (stating that "[t]his is not the kind of facial attack on the enabling statute's constitutionality [that] is generally required to bypass statutory remedies"); *accord Hawbaker*, 304 A.3d at 1082; *Nicholas*, 681 A.2d at 161 (requiring a petitioner to establish "a substantial question of constitutionality" (cleaned up)).

14

affirmed this Court's order sustaining the preliminary objection at issue. *Id.* at 272.[23]

Instantly, unlike *Rehab I*, Petitioners do not raise any constitutional challenge in their petition for review. *Cf. id.* at 269. Because our jurisprudence requires "both a substantial question of constitutionality *and* the absence of an adequate statutory remedy," we hold Petitioners failed to invoke this Court's equitable jurisdiction properly. *See Nicholas*, 681 A.2d at 161 (emphasis in original and cleaned up); *accord Hawbaker*, 304 A.3d at 1082-83 & n.17; *see generally* Prelim. Objs. at 2-3; DHS's Br. at 28. Accordingly, we reject Petitioners' attempt to bypass the exhaustion doctrine and invoke this Court's equitable jurisdiction under the Declaratory Judgments Act. *See Hawbaker*, 304 A.3d at 1084-85. Nevertheless, identical to the *Hawbaker* and *Rehab I* Courts, we also address the adequacy of the administrative remedy.[24]

In that regard, this case is remarkably similar to *Rehab I* and *Beal*. Much like the *Rehab I* petition for review, the instant petition for review also challenges "the adequacy of state funding" for rehabilitative services to developmentally disabled individuals. *Compare Rehab I*, 283 A.3d at 262, 270 (summarizing *Beal*), *with* Pet. for Review. Indeed, Rehab Association, Schwartz, and Brett are identical petitioners in both *Rehab I* and the case at bar. *Compare Rehab I*, 283 A.3d at 262, *with* Pet. for Review. *Rehab I* and *Beal* also had services providers much like Cori's Place. *Compare Rehab I*, 283 A.3d at 264, *and Beal*, 412 A.2d at 515, *with* Pet. for Review. Identical to the petitioners in *Rehab I* and similar to the facility in *Beal*, the instant Petitioners also seek a declaration that the new fees

---

[23] The *Rehab I* Court also remanded to this Court to address the unresolved preliminary objections, where they remain pending. *Rehab I*, 283 A.3d at 271-72; Petr's' Br. at 23 n.4.

[24] In *Hawbaker*, our Supreme Court similarly proceeded to analyze whether the petitioner demonstrated "the absence of an adequate administrative remedy" by *assuming* that the petitioner "raised a substantial constitutional or validity challenge to" the agency regulations at issue. *Hawbaker*, 304 A.3d at 1085; *see Rehab I*, 283 A.3d at 270.

violate the law and injunctive relief directing DHS to revise the fees in compliance with the law. *Compare Rehab I*, 283 A.3d at 264-65, *and Beal*, 412 A.2d at 515, *with* Pet. for Review. Finally, as observed by the *Rehab I* Court, Petitioners concede that service providers have an administrative remedy under 55 Pa. Code § 6100.41. *Compare Rehab I*, 283 A.3d at 270 (stating that providers have "an administrative avenue to challenge the new fee schedule in accordance with" 55 Pa. Code § 6100.41), *with* Pet. for Review ¶ 3 (averring that providers "have an administrative remedy available in the form of an appeal to" BHA).

Given the substantial overlap of parties, claims, and forms of relief in both *Rehab I* and the instant case, we are persuaded by the *Rehab I* and *Beal* Courts' reasoning to the extent it applies to Cori's Place. Identical to the service providers in *Rehab I* and the facility in *Beal*, Cori's Place contended that DHS's reimbursement fees are insufficient. *See Rehab I*, 283 A.3d at 264-65; *Beal*, 412 A.2d at 515. To paraphrase the *Rehab I* and *Beal* Courts, to determine the adequacy of DHS's fees, there is a "need for factual development at the administrative level." *See Rehab I*, 283 A.3d at 270 (citation omitted); *Beal*, 412 A.2d at 515. DHS must "be allowed to develop the factual background and apply its expertise before the courts get involved[.]" *See Rehab I*, 283 A.3d at 270 (cleaned up) (holding there is "no reason to create an exception to the exhaustion requirement" (citation omitted)); *Beal*, 412 A.2d at 515.[25]

---

[25] At oral argument on this matter, DHS's counsel represented to this Court that numerous providers are appealing the revised fees to BHA. As noted by the *Rehab I* Court, it was undisputed that at least one of the *Rehab I* petitioners "had already filed an administrative appeal with the BHA challenging the new reimbursement" fees. *Rehab I*, 283 A.3d at 270 (holding that the petitioners failed to show the inadequacy of the administrative remedy). Assuming the accuracy of DHS's representation, the fact that providers are pursuing administrative relief further militates against this Court exercising its equitable jurisdiction prematurely. *Cf. Physicians*, 520 A.2d at 912-13.

16

Because of the need for factual development at the administrative level to resolve Cori's Place's claim before DHS, it follows we should decline to exercise our equitable jurisdiction over Rehab Association. *See Physicians*, 520 A.2d at 912-13. In *Physicians*, this Court reasoned that because members of the association were actually pursuing their administrative remedies, it would be premature for this Court to act on the association's claim before the agency completed its review. *See id.* Although Cori's Place has not yet appealed to DHS, we agree that *because* Cori's Place has an available, adequate administrative remedy, we must also decline Rehab Association's premature invitation to exercise our equitable jurisdiction. *See id.*

Additionally, to the extent that Petitioners maintain that litigation expenses cannot be used as a factor in resolving the adequacy of an administrative remedy, we disagree for two reasons. First, Petitioners failed to raise a substantial constitutional question. *See Nicholas*, 681 A.2d at 161; *accord Hawbaker*, 304 A.3d at 1083 n.17. In other words, even if Petitioners established the inadequacy of their administrative remedy because of litigation expenses, they cannot invoke this Court's equitable jurisdiction properly. *See Nicholas*, 681 A.2d at 161; *accord Hawbaker*, 304 A.3d at 1083 n.17. Second, our Supreme Court rejected an analogous argument that the costs of litigating an agency appeal "or the deprivation of earnings" constituted sufficient irreparable injury to trigger this Court's equitable jurisdiction. *See Rehab I*, 283 A.3d at 271.

Finally, the *Rehab I* Court rejected Petitioners' arguments that this Court, instead of the BHA, must establish a factual record to resolve preliminary objections. *See id.* Identical to the *Beal* Court, we also hold that "nothing on this record" indicates that a DHS hearing "would *not* afford [Cori's Place and Rehab Association] a full opportunity to establish its actual, legitimate costs and any

17

claimed failure to reimburse properly." *See Beal*, 412 A.2d at 516 (cleaned up and emphasis added). For all these reasons, we sustain DHS's first and second preliminary objections, which assert that Cori's Place and Rehab Association failed to exhaust their administrative remedies.

### B. Fifth Preliminary Objection - Individual Petitioners

In support of its fifth preliminary objection, DHS contends that Individual Petitioners have no standing. DHS's Br. at 36. Specifically, per DHS, Schwartz and Brett lack standing because they failed to allege they would "be harmed by the challenged" fees. *Id.* To the extent that Schwartz and Brett contend that their providers could cease operations/providing services, DHS asserts their contention is too speculative to confer standing. *Id.* at 36-37. DHS also construes as speculative any assertion by Schwartz and Brett that they would have to change providers before their current providers ceased operations. *Id.* at 37. DHS maintains that Schwartz and Brett are not directly harmed by any change in fees. *Id.* at 38. With respect to DeCarlo and Saadoun, DHS notes that because they failed to identify the services they cannot receive, they may not have been harmed. *Id.* at 38-39.[26]

Initially, parties "may raise questions regarding standing . . . by filing preliminary objections to a petition for review filed in the original jurisdiction of the

---

[26] DHS adds that to the extent that DeCarlo and Saadoun dispute access to "community participation support services," 52 Pa. B. 1328 (2022), those fees are not in effect. *See* DHS's Br. at 24. DHS noted that those fees would have been in effect in November 2023, which is six months after the federal health emergency expired. *Id.* at 24 n.5. Subsequently, DHS announced that it would not be effectuating the fees announced at 52 Pa. B. 1328 (2022). *Id.*

Individual Petitioners counter by declaring this Court must accept their factual averments that they are harmed by DHS's fees. Pet'rs' Br. at 42-43. In their view, they set forth "sufficiently specific" factual averments such that we should overrule DHS's preliminary objections. *Id.* at 43-44. They summarily maintain that (1) their entitlement to the services at issue, and (2) the deprivation of such services, establish their standing. *Id.* at 44-45. Individual Petitioners insist that we should reject DHS's "suggestion that [their] harm is insufficient to confer standing . . . ." *Id.* at 45.

18

Commonwealth Court, similar to those permitted in a civil action." *Robinson*, 83 A.3d at 917 (cleaned up). The "doctrine of standing is an inquiry into whether the petitioner filing suit has demonstrated aggrievement, by establishing a substantial, direct and immediate interest in the outcome of the litigation." *Id.* (cleaned up). "[M]atters of standing may involve factual questions . . . ." *Citizens*, 916 A.2d at 627; *C.G.*, 172 A.3d at 54; *see also Robinson*, 83 A.3d at 917; *Small*, 722 A.2d at 668. Thus, when factual questions exist as to "threshold issues such as standing," remand may be appropriate to develop the record further. *Rehab I*, 283 A.3d at 272 n.19; *see C.G.*, 172 A.3d at 54.

In *Rehab I*, this Court did not address the standing of Schwartz and Brett, *i.e.*, the individual petitioners who are *also* petitioners in the instant case. *Rehab I*, 283 A.3d at 271. This Court's failure prompted our Supreme Court to remand the matter to this Court "to pass fully upon the remaining preliminary objections . . . ." *Id.* Further, our Supreme Court instructed that if this Court decided that "any material facts are at issue in relation" to, *inter alia*, the standing of Schwartz and Brett, then we should establish an adequate record. *Id.* at 271-72 & n.19.

In that regard, the *Rehab I* concurrence observed that "there are factual questions surrounding the threshold issue of standing: DHS argues [that Schwartz's and Brett's] alleged harm is too remote, but [they] argue they have standing because they will certainly lose their services due to the allegedly inadequate" fees. *Id.* at 274 (Dougherty, J., concurring). Accordingly, Justice Dougherty reasoned that any "factual inquiry" regarding Schwartz's and Brett's standing "would significantly overlap with one of the issues pertaining to the [p]roviders, *i.e.*, whether the [fees] set by DHS are so insufficient that the [p]roviders can no longer supply their

services. [DHS] will likely also have to address that issue when adjudicating the [p]roviders' claims." *Id.*

Instantly, as noted above, Petitioners failed to raise a constitutional challenge and thus, even if Individual Petitioners had standing, they failed to invoke this Court's equitable jurisdiction properly. *See Nicholas*, 681 A.2d at 161 (explaining that a party must establish "both a substantial question of constitutionality *and* the absence of an adequate statutory remedy" to bypass the exhaustion doctrine (emphasis in original and cleaned up)); *accord Hawbaker*, 304 A.3d at 1083-84 & n.17. Regardless, we observe the following.

The instant petition for review parallels the petition for review in *Rehab I*. *Compare Rehab I*, 283 A.3d at 262, *with* Pet. for Review. With respect to the Individual Petitioners before this Court, to quote our Supreme Court, "there may be factual issues surrounding threshold issues such as standing" of the Individual Petitioners. *Rehab I*, 283 A.3d at 272 n.19 (acknowledging the individual petitioners' arguments that they would lose access to services). To paraphrase the concurrence, any factual inquiry into Individual Petitioners' standing *significantly overlaps* with the issue of whether DHS's fees are so insufficient that Cori's Place and Rehab Association can no longer provide their services to Individual Petitioners. *See id.* at 274 (Dougherty, J., concurring). For these reasons, we sustain DHS's fifth preliminary objection directed to Individual Petitioners' standing.[27]

## IV. CONCLUSION

Accordingly, we sustain DHS's first, second, and fifth preliminary

---

[27] Due to the overlapping issues, further factual development before the agency best suited for the task is necessary. Following development of the record, DHS may then address, if raised, the standing of any petitioner, including Individual Petitioners and Rehab Association.

Because no party addressed primary jurisdiction, we cannot raise the issue. *See Gibraltar Rock, Inc. v. Dep't of Env't Prot.*, 286 A.3d 713, 725 (Pa. 2022). However, one Justice suggested

objections and dismiss as moot DHS's remaining preliminary objections. We dismiss Petitioners' petition for review without prejudice.

LORI A. DUMAS, Judge

that Pennsylvania "courts may raise the primary jurisdiction doctrine *sua sponte* since the doctrine functions to ensure proper distribution of power between judicial and administrative bodies (and not for the convenience of the parties)." *Rehab I*, 283 A.3d at 273 n.2 (Dougherty, J., concurring) (cleaned up).

In any event, the "primary jurisdiction doctrine applies where the administrative agency cannot provide a means of complete redress to the complaining party and yet the dispute involves issues that are clearly better resolved in the first instance by the administrative agency charged with regulating the subject matter of the dispute." *Id.* at 273 (cleaned up). "The doctrine requires judicial abstention in cases where protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme." *Id.* (cleaned up). The concurrence pointed out the practical difficulties involved and "risk of inconsistent rulings" if both this Court and DHS "were to simultaneously adjudicate the same issues . . . ." *Id.* at 274-75.

In the context of *Rehab I*, the concurrence acknowledged that "the General Assembly has empowered DHS to set provider [fees] . . . and an aggrieved provider to request a hearing before the [BHA] to challenge those [fees]." *Id.* at 274 (cleaned up). Because the providers, Rehab Association, and Schwartz and Brett (two of the individual petitioners in the instant case), had filed a single petition raising the same allegations, "it is foreseeable that both [BHA] and the Commonwealth Court on remand might be tasked with evaluating the same issues on dual tracks." *Id.*

Although not binding on this Court, to the extent this Court may invoke primary jurisdiction *sua sponte*, we agree with the concurrence's observations. Mindful of DHS's regulatory authority and expertise over fee reimbursement, as well as the concerns of *res judicata* and premature or inconsistent rulings, we would alternatively dismiss Petitioners' petition for review without prejudice on this ground. *See id.*; *see also id.* at 270 n.17 (noting that the "premature interruption of the administrative process restricts the agency's opportunity to develop an adequate factual record, limits the agency in the exercise of its expertise and impedes the development of a cohesive body of law in that area" (citation omitted)); *Physicians*, 520 A.2d at 912-13 (declining to exercise equitable jurisdiction before the agency completed its factfinding). As our Supreme Court held, "it is our expectation that [DHS] will discharge its adjudicatory functions in good faith by allowing [Petitioners] to raise and develop every issue it chooses to advance and by giving each issue its due consideration, so that an adequate record is created should appellate review become necessary." *Hawbaker*, 304 A.3d at 1090. Further, pursuing simultaneous judicial and administrative relief risks "inconsistent rulings between the Commonwealth Court and the agency," particularly when an administrative remedy exists and, per DHS's counsel, providers are currently appealing to BHA. *See Rehab I*, 283 A.3d at 275 (Dougherty, J., concurring); *id.* at 271.

21

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rehabilitation & Community : 
Providers Association; Cori's : 
Place, Inc.; Scott Howard Schwartz : 
by and through Linda Schwartz and : 
Karen Newman, CO Guardians, : 
Ryan Brett by and through his : 
Guardian Francis Brett; Danielle : 
DeCarlo by and through Daniel : 
DeCarlo and Mary Jean DeCarlo, : 
CO Guardians; and Maya Ester : 
Saadoun through Elisabeth and : 
Fabrice Saadoun, CO Guardians, : 
          Petitioners : 
                                 : 
                                 :   No. 564 M.D. 2022
              v. : 
                                 : 
Department of Human Services, : 
Office of Developmental : 
Programs, : 
          Respondent : 

# **O R D E R**

AND NOW, this 26th day of January, 2024, we SUSTAIN the first, second, and fifth preliminary objections filed by Department of Human Services, Office of Developmental Programs (DHS). We DISMISS as moot DHS's remaining preliminary objections. We DISMISS without prejudice the petition for review filed by Rehabilitation & Community Providers Association, Cori's Place, Inc., Scott Howard Schwartz by and through Linda Schwartz and Karen Newman (co-guardians), Ryan Brett by and through his guardian Francis Brett, Danielle DeCarlo by and through Daniel DeCarlo and Mary Jean DeCarlo (co-guardians), and Maya Ester Saadoun through Elisabeth and Fabrice Saadoun (co-guardians).

                                        _____

                                        LORI A. DUMAS, Judge