520 A.2d 909

Pennsylvania Association of State Mental Hospital Physicians, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Department of Corrections and Glen R. Jeffes, Commissioner, Pennsylvania Department of Corrections, Respondents.

Argued December 9, 1986, before Judges CRAIG and DOYLE, and Senior Judge BLATT, sitting as a panel of three.

*Samuel L. Spear*, with him, *Leonard Spear* and *Margaret A. Browning, Spear, Wilderman, Sigmond, Borish, Endy and Silverstein,* for petitioner.

*Thomas B. York,* Deputy Attorney General, with him, *Andrew S. Gordon,* Chief Deputy Attorney General, Chief, Litigation Section, and *LeRoy S. Zimmerman,* Attorney General, for respondents.

OPINION BY JUDGE CRAIG, February 3, 1987:

The Pennsylvania Association of State Mental Hospital Physicians (association) filed a petition for review and request for preliminary and permanent injunctive relief against the Department of Corrections (department) to void a contract executed by the department and Correctional Medical Systems, Inc. (CMS) and to seek damages for the department's allegedly improper furlough of four of the association's members. This court denied the association's request for a temporary restraining order and, in a later proceeding, the request for a preliminary injunction. We now consider the association's petition and request for permanent injunctive relief and the department's preliminary objections.

The department formerly employed four of the association's members as staff physicians at the State Correctional Institution at Graterford. On July 2, 1986, department Commissioner Glen R. Jeffes notified the four physicians that, "because of the Institution's historical problem in recruiting and retaining medical staff," the Commonwealth had executed an agreement with CMS for that company to render comprehensive health care services at the Graterford facility. As a consequence, the department furloughed the physicians for lack of work, effective July 31, 1986.

The association's petition for review recites three counts: Count I, that the department lacked statutory authority to contract with CMS; Count II, that the department's contract with CMS "violates the letter and spirit of the State Civil Service Act"; and Count III, that the department's furlough of the physicians violates section 802 of the Civil Service Act[1] because the furloughs were not based on a legitimate lack of work.

---

[1] Act of August 5, 1941, P.L. 752, *as amended,* 71 P.S. §741.802.

The department preliminarily objects to the association's claims on the grounds that: (1) the association failed to state a cause of action because the department is statutorily authorized to contract with CMS; (2) this court lacks jurisdiction because the association failed to exhaust its administrative remedies; and (3) the association failed to join CMS as an indispensable party to the suit. We will assess each of the association's claims against the department's objections.

## Count I: Lack of Statutory Authority; Demurrer

Initially, we must determine if jurisdiction exists for this court to entertain the association's claim that the department lacked statutory authority to contract with CMS for health care for the Graterford facility. The department argues that, to the extent that the association seeks to enforce the terms of the collective bargaining agreement, it must first follow the grievance procedure outlined in it. Additionally, the department contends that, if the association is claiming an unfair labor practice, the case should go first to the Pennsylvania Labor Relations Board.

However, the association's claim does not fall within either of the two categories described by the department. The association is attacking a contract executed by the department and a third party provider. Specifically, the association seeks to have this court declare the department's contract with CMS unlawful. In *Parker v. Pennsylvania Department of Public Welfare*, 49 Pa. Commonwealth Ct. 619, 411 A.2d 897 (1980), we held that this court has jurisdiction over a petition for review for a declaratory judgment as to the validity of an "Agreement and Authorization to Pay Claim," involving the Department of Public Welfare. Because Parker's petition was not to enforce a contract claim against the Commonwealth, which would have been within the ju-

risdiction of the Board of Claims, but was rather a petition to rule on the validity of the contract, the case was within the original jurisdiction of this court.

Similarly, the association's request here is essentially one for declaratory judgment as to the validity of the department's contract. Because the association does not aver an unfair labor practice or breach of employment contract, neither the Labor Relations Board nor the grievance procedures in the employment contract provide an appropriate avenue for the association's claim. Therefore, Count I may not be dismissed for a lack of exhaustion of administrative remedies because no administrative forum has jurisdiction over that particular claim.

Additionally, because virtually all of the association's members face injury to a substantial legal interest, *i.e.* their employment, if the department illegally contracts out such services, the association, acting in its representative capacity, has standing to challenge the department's contract. *Pennsylvania Association of State Mental Hospital Physicians v. State Employees' Retirement Board,* 25 Pa. Commonwealth Ct. 632, 361 A.2d 449 (1976), *opinion noted* 31 Pa. Commonwealth Ct. 151, 375 A.2d 863 (1977), *aff'd* 484 Pa. 313, 399 A.2d 93 (1979).

Turning to the merits of the department's objection,[2] we note that section 507 of the Administrative Code of 1929,[3] 71 P.S. §187, provides:

---

[2] A demurrer will be sustained only when it appears, with certainty, that the law permits no recovery under the allegations pleaded, and the objection must be overruled if the allegations state a cause of action under any theory of the law; thus this court must decide any question of law which is determinative as to the proper disposition of the demurrer. *Zemprelli v. Thornburgh,* 73 Pa. Commonwealth Ct. 101, 457 A.2d 1326 (1983).

[3] Act of April 9, 1929, P.L. 177, *as amended.*

Notwithstanding any of the foregoing provisions of this section, any department, board or commission may:

. . . .

(4) Employ professional or skilled labor, on a temporary basis, in instances where the Department of Property and Supplies does not have an applicable contract, but all such employment shall be approved by the Governor except in the case of a State institution, when it shall be approved by the head of the department having supervision over the institution;

A two-year contract with an independent health care provider is precisely the sort of temporary employment of professional labor contemplated and authorized by section 507. The whole context of section 507 indicates that it deals with contracting for services, as distinguished from employment in the sense of placing persons on the payroll. The above-quoted subsection (4) itself refers to "an applicable contract" with respect to professional services, and the other subsections deal with the purchase of materials and contracting for services.

We therefore cannot conclude that the Commonwealth lacked authority to enter into the CMS contract, and we consequently sustain the department's preliminary objection in the form of a demurrer to Count I of the association's petition.

### Count II: Negation of Contracting Authority by the Civil Service Act; Demurrer

Count II of the association's petition alleges that the department's contract with CMS "violates the letter and spirit of the state Civil Service Act, which requires that public employees be afforded civil service status, and which intends to create a stable core of publicly ac-

countable employees who are paid by and accountable to the Commonwealth of Pennsylvania." The count also avers that contracting for professional services is a circumvention of the civil service system.

The association cites no direct authority to support these remarkable contentions. The Civil Service Act neither explicitly nor implicitly repeals the legislature's express grant of authority to state agencies to contract for the temporary employment of non-civil service professional labor in section 507 of the Administrative Code. Statutory authority to contract for professional services can, and universally does, co-exist with a system for the protection of civil service employees.

Carried to its logical result, the association's Count II thesis would prohibit public service contracts entirely and require all government functions to be performed by persons on the government payroll.

The Civil Service Act provides—to the specific individuals involved—a sufficient administrative remedy whenever they might be wrongly furloughed as a result of a contract for professional services; that matter is the concern of Count III, discussed below.

Count II, which merely seeks to augment the claim of Count I—that the power to contract for medical services is absent—similarly fails to state any cause of action founded upon a lack of statutory authority. Consequently, the demurrer to Count II is also sustained.

### Count III: Civil Service Act Violations; Exhaustion of Administrative Remedies

The third count of the association's petition alleges violations of the Civil Service Act centered upon the department's furloughing of the particular four staff physicians at Graterford.

Section 203 of the Civil Service Act[4] provides that the Civil Service Commission shall hold public hearings, render decisions on appeals and record its findings and conclusions in cases of demotion, *furlough,* suspension and removal. Hence, we note that the Civil Service Commission's statutory mandate creates an adequate forum from which those four physicians have not yet received a final order as to their furloughs.

The association maintains, however, that it has an interest, independent of the employment rights of its members, in challenging the department's noncompliance with the civil service laws which is litigable in this court's original jurisdiction. We disagree. Although, as noted above, the association has standing to challenge the exercise of contracting-out powers as affecting virtually all the members of the association, it lacks standing to substitute itself for specific members having individual civil service claims. The real benefit which the association might realize from Count III derives primarily from the relief granted to the individual physicians.

In light of the fact that the association's members are presently before the Civil Service Commission individually, action by this court, before the commission concludes its essential factfinding and analytical functions, would be improvident. We conclude, therefore, that the association's civil service claim, in its own capacity, is not so distinct as to warrant this court's original jurisdiction in circumvention of the Civil Service Commission.

## Conclusion

We conclude that Counts I and II of the association's petition fail to state any cause of action because section 507 of the Administrative Code authorizes the Department of Corrections to contract with an independent

---

[4] 71 P.S. §741.203.

firm for health care services, and that such explicit authorization prevails over any unspoken policy, negating professional service contracts, allegedly implied by the Civil Service Act. We also conclude that Count III constitutes an insupportable attempt to displace the furlough remedies available to the association's laid-off physicians, who must exhaust their administrative remedies under the Civil Service Act. Hence, we sustain the department's preliminary objections and dismiss the association's petition for review and request for injunctive relief.

### ORDER

Now, February 3, 1987, the respondents' preliminary objections to the petitioner's petition for review and request for preliminary and permanent injunctive relief are granted and the case dismissed.