IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rehabilitation and Community     :
Providers Association, and     :
Westmoreland County Blind     :
Association, and Associated     :
Production Services, Inc., and United     :
Cerebral Palsy of Central Pennsylvania,     :
Inc. and Scott Howard Schwartz by and     :
through Theodore A. Schwartz, Co     :
Guardian, and Ryan Brett by and     :
through His Guardian Francis Brett,     :
              Petitioners     :
    :
        v.     :   No. 543 M.D. 2019
    :
Department of Human Services     :
Office of Developmental Programs,     :
              Respondents     :   Submitted: September 9, 2024

BEFORE:   HONORABLE ELLEN CEISLER, Judge
             HONORABLE LORI A. DUMAS, Judge
             HONORABLE MARY HANNAH LEAVITT, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE CEISLER                       FILED: October 24, 2024

This case returns to us following remand from the Pennsylvania Supreme Court for our consideration of the remaining Preliminary Objections filed by the Department of Human Services, Office of Developmental Programs (DHS) to the First Amended Petition for Review (Petition for Review) filed by Rehabilitation and

Community Providers Association (RCPA) and Scott Howard Schwartz and Ryan Brett (together, Individual Petitioners).[1]

As discussed more fully below, we conclude that RCPA and Individual Petitioners, the only remaining petitioners in this case, lack standing to maintain this action. Therefore, we sustain DHS's Preliminary Objection challenging their standing and dismiss the Petition for Review.

## Background

RCPA "is a Pennsylvania state-wide advocacy organization representing over 350 members that serve over 1 million Pennsylvanians." Pet. for Rev. ¶ 2. RCPA's members provide community participation support (CPS) services to individuals with intellectual disabilities and receive reimbursement from DHS for their services. *Id.* Individual Petitioners are two intellectually disabled adults who receive CPS services from Associated Production Services, Inc., one of RCPA's members. *Id.* ¶¶ 4, 6-7.

RCPA and Individual Petitioners filed the instant Petition for Review with this Court in our original jurisdiction on November 13, 2019. In their Petition for Review, RCPA and Individual Petitioners allege that in May 2019, DHS improperly implemented a new rate reimbursement system under which RCPA's members will no longer receive the necessary funding to keep their CPS programs operational. RCPA and Individual Petitioners aver in pertinent part:

> By publishing a May 25th Final Notice in the Pennsylvania Bulletin, DHS[] ha[s] instituted a new reimbursement system by which [CPS]

---

[1] As discussed *infra*, Westmoreland County Blind Association, Associated Production Services, Inc., and United Cerebral Palsy of Central Pennsylvania, Inc. (together, Provider Petitioners) are no longer parties to this case. We refer to RCPA, Individual Petitioners, and Provider Petitioners collectively as "Petitioners" in our recitation of the procedural history of this case.

2

services are to be provided to people with intellectual disabilities. The rates under this new system do not reflect the costs to provide [CPS services]. First quarter fiscal year [20]19-[20]20 actual costs incurred by efficient and economically run providers are between 106.87% and 153.98% of the rates set in the Final Notice. The difference between rates and actual costs is un[su]stainable.

*Id.* ¶ 10.

RCPA and Individual Petitioners seek declaratory and injunctive relief to invalidate DHS's new reimbursement system in the form of (1) a declaration that the Final Notice is an unpromulgated regulation that is inconsistent with federally approved payment methodologies and (2) an injunction enjoining DHS from implementing the new reimbursement rates. Pet. for Rev. at 31-32.

On December 13, 2019, DHS filed Preliminary Objections to the Petition for Review, asserting eight objections. On February 3, 2021, this Court issued an Opinion and Order sustaining DHS's Preliminary Objection asserting that Provider Petitioners failed to exhaust their administrative remedies and dismissed the Petition for Review in its entirety. *See Rehab. & Cmty. Providers Ass'n v. Dep't of Hum. Servs.* (Pa. Cmwlth., No. 543 M.D. 2019, filed Feb. 3. 2021) (*RCPA I*), *aff'd in part and vacated in part*, 283 A.3d 260 (Pa. 2022) (*RCPA II*). Petitioners then appealed to the Pennsylvania Supreme Court.[2]

On September 29, 2022, the Supreme Court affirmed in part and vacated in part this Court's Order and remanded the matter for further proceedings. Specifically, the Supreme Court upheld this Court's determination that Provider Petitioners failed to exhaust their administrative remedies. *RCPA II*, 283 A.3d at

___

[2] In our February 3, 2021 decision, this Court also overruled Petitioners' Preliminary Objections in the form of a Motion to Strike DHS's Preliminary Objections for failure to conform to the Pennsylvania Rules of Civil Procedure. *RCPA I*, slip op. at 6-9. Petitioners did not challenge that ruling in their appeal to the Supreme Court, *see RCPA II*, 283 A.3d at 265, nor do they reassert those Preliminary Objections on remand.

272. The Supreme Court observed that the Petition for Review primarily avers that the Final Notice is "an unpromulgated regulation and [that] its provisions are inconsistent with legal mandates requiring adequate funding for the services involved." *Id.* at 269. Thus, "at its core," the Petition for Review "challenges the legal adequacy of the new fee schedule." *Id.*

Regarding the exhaustion issue, the Supreme Court concluded:

This case is similar to *Delaware Valley Convalescent Center v. Beal*, . . . 412 A.2d 514 ([Pa.] 1980), in which a skilled nursing facility sought to challenge a Medical Assistance reimbursement ceiling established by DHS, on the basis that it was not reasonably cost related and thus a clear violation of federal law, without first invoking the administrative appeal process within DHS. *Noting the policy basis of the exhaustion requirement, including that the agency should be allowed to develop the factual background and apply its expertise before the courts get involved, th*[*e Supreme*] *Court referred to the need for factual development at the administrative level to determine whether the reimbursement rate was inadequate.* The [*Beal*] Court found no reason to create an exception to the exhaustion requirement, *and there is likewise no reason to do so here*.

. . . Here, *the Provider Petitioners had an administrative avenue to challenge the new fee schedule . . . , and they have failed to show they cannot obtain the relief they asked for in the Petition* [*for Review*] *through those proceedings.* In fact, the Commonwealth Court observed it was undisputed that at least one of the Provider Petitioners had already filed an administrative appeal with [DHS's Bureau of Hearings and Appeals (BHA)] challenging the new reimbursement rates, and that that appeal was pending when the [Commonwealth C]ourt ruled on DHS[]'s preliminary objections. The [Commonwealth C]ourt continued by highlighting that *the BHA has authority to determine whether the Final Notice is an unpromulgated regulation or otherwise violates state or federal laws, and that, under DHS's regulations, a Medical Assistance provider may seek declaratory relief in an appeal before the BHA*.

4

*Id.* at 270 (internal citations and footnote omitted) (emphasis added). Therefore, the Supreme Court affirmed the portion of this Court's Order "sustain[ing] [DHS's] [P]reliminary [O]bjection asserting that the Provider Petitioners failed to exhaust their administrative remedies and dismiss[ing] the Petition [for Review] as to those parties." *Id.* at 272. The Supreme Court vacated the remainder of this Court's Order and remanded the matter for our consideration of the remaining Preliminary Objections, with the following directive:

> We believe the Commonwealth Court should have the opportunity, in the first instance, to pass fully upon the remaining [P]reliminary [O]bjections and, if any material facts are at issue in relation to them, to "establish a record adequate for its determination and . . . appellate review." This course of action will also allow us to benefit from the Commonwealth Court's analysis should the matter again be appealed to us.

*Id.* at 271-72 (internal citations omitted).

Justice Dougherty authored a Concurring Opinion in *RCPA II*, in which he fully joined the Majority Opinion but wrote "separately to highlight certain issues for the Commonwealth Court's consideration on remand." *Id.* at 272 (Dougherty, J., concurring). Justice Dougherty advised this Court as follows:

> [O]ur remand does not give the Commonwealth Court carte blanche to decide issues that otherwise should be decided in the first instance by the [BHA], even as they pertain to [Individual Petitioners] and RCPA. The Commonwealth Court should instead consider the extent to which its factfinding will implicate questions that would typically be addressed by the [BHA] first, and, if applicable, to act (or wait to act) in accordance with the doctrine of primary jurisdiction.

*Id.* at 273.

Following remand, in accordance with this Court's December 12, 2023 and December 21, 2023 Orders, the parties filed supplemental briefs addressing the outstanding issues before this Court on remand.

## Analysis

In ruling on preliminary objections, this Court must "accept as true all well-pleaded material allegations in the petition for review and any reasonable inferences that [it] may draw from the averments." *Highley v. Dep't of Transp.*, 195 A.3d 1078, 1082 (Pa. Cmwlth. 2018). However, we are "not bound by legal conclusions, unwarranted inferences from facts, argumentative allegations, or expressions of opinion encompassed in the petition for review." *Id.* This Court should sustain preliminary objections only where "the law makes clear that the petitioner[s] cannot succeed on [their] claim[s]." *Id.* at 1083. "[W]here any doubt exists as to whether the preliminary objections should be sustained, the doubt must be resolved in favor of overruling the preliminary objections." *Pa. State Lodge, Fraternal Ord. of Police v. Dep't of Conservation & Nat. Res.*, 909 A.2d 413, 416 (Pa. Cmwlth. 2006), *aff'd*, 924 A.2d 1203 (Pa. 2007).

In its remaining Preliminary Objections, DHS asserts that RCPA and Individual Petitioners lack standing to maintain this action and also asserts *lis pendens* and demurrer objections to their claims for relief. We will address the standing objection first because "[a]s a threshold issue, prior to judicial resolution, a petitioner must show he has standing to bring the action." *Scarnati v. Dep't of Env't Prot.*, 220 A.3d 723, 728 (Pa. Cmwlth. 2019), *aff'd*, 240 A.3d 536 (Pa. 2020).

### 1. RCPA's Standing

First, DHS asserts that RCPA lacks associational standing because its members have an available administrative remedy and because it cannot rely on the

6

alleged harm to individuals who receive CPS services to support its claim of associational standing.[3]

To have standing, an association must allege an injury to at least one of its members as a result of the challenged action. *Pa. Soc. Servs. Union, Local 668 v. Dep't of Pub. Welfare*, 699 A.2d 807, 810 (Pa. Cmwlth. 1997). The association member (or members) must have an interest in the litigation that is substantial, direct, and immediate. *Id.* Moreover, "as a representative of its members, an association may have standing to challenge an immediate or threatened injury affecting virtually all of the members of the association, even in the absence of injury to itself." *Pa. Higher Educ. Assistance Agency v. State Emps.' Ret. Bd.*, 617 A.2d 93, 95 (Pa. Cmwlth. 1992), *aff'd per curiam*, 636 A.2d 629 (Pa. 1994). "However, when an association attempts to substitute itself for specific members having individual claims[] . . . *the association lacks standing*." *Id.* (emphasis added). That is because any benefit the association would have "derives primarily from the relief granted to the individual" members. *Pa. Ass'n of State Mental Hosp. Physicians v. Dep't of Corr.*, 520 A.2d 909, 913 (Pa. Cmwlth. 1987).

In their Petition for Review, RCPA and Individual Petitioners aver that "RCPA has associational standing to maintain this action as a representative of its

---

[3] In his Concurring Opinion, Justice Dougherty noted that DHS first raised this particular argument regarding RCPA's standing in its appeal to the Supreme Court. Justice Dougherty clarified, however:

> The "defenses of failure to exercise or exhaust a statutory remedy and an adequate remedy at law" are *nonwaivable defenses that may be raised even after a party fails to raise them by preliminary objection, answer, or reply*. Pa.R.C[iv].P. 1032(a). . . . [T]his means that our disposition of the present appeal does not preclude DHS from raising the issue in the Commonwealth Court on remand*.

*RCPA II*, 283 A.3d at 272-73 (Dougherty, J., concurring) (emphasis added).

7

members – including but not limited to [Provider Petitioners].” Pet. for Rev. ¶ 16. We disagree.

First, as our Supreme Court concluded in *RCPA II*, Provider Petitioners, all of which are members of RCPA, have an available administrative remedy that they were required to exhaust. *RCPA II*, 283 A.3d at 271-72. Second, this Court recently determined, in a case involving virtually identical facts and three of the same petitioners (RCPA and Individual Petitioners), that “if an individual party has an administrative remedy and that party is also a member of an association, *then that association cannot bring an identical claim*.” *Rehab. & Cmty. Providers Ass’n v. Dep’t of Hum. Servs.* (Pa. Cmwlth., No. 564 M.D. 2022, filed Jan. 26, 2024), slip op. at 8 n.15 (citing *State Mental Hosp.*, 520 A.2d at 913) (emphasis added).[4]

For example, in *State Mental Hospital*, we dismissed an association’s petition for review alleging civil service violations based on the furlough of four member-physicians on the ground that the association “lack[ed] standing to substitute itself for specific members having individual civil service claims.” 520 A.2d at 913. We reasoned as follows:

> *In light of the fact that [four of] the association’s members are presently before the Civil Service Commission individually, action by this [C]ourt, before the [C]ommission concludes its essential factfinding and analytical functions, would be improvident.* We conclude, therefore, that the association’s civil service claim, in its own capacity, is *not so distinct as to warrant this [C]ourt’s original jurisdiction in circumvention of the Civil Service Commission.*

*Id.* (emphasis added).

---

[4] An unreported decision of this Court, issued after January 15, 2008, may be cited for its persuasive value pursuant to Section 414(a) of this Court’s Internal Operating Procedures, 210 Pa. Code § 69.414(a).

Here, like the association in *State Mental Hospital*, RCPA's claims are not distinct from the claims of its provider-members that have an administrative remedy. Indeed, as the Supreme Court observed in this case, "at least one of the Provider Petitioners had already filed an administrative appeal with the BHA challenging the new reimbursement rates," *RCPA II*, 283 A.3d at 270, and, according to DHS, that appeal, as well as several other provider appeals, are presently pending before the BHA. *See, e.g.*, DHS Br. at 29 n.7 ("[United Cerebral Palsy of Central Pennsylvania, Inc.] is one of eight providers whose appeals are scheduled to be heard by [the] BHA beginning January 22, 2024.").

In support of their associational standing claim, RCPA and Individual Petitioners rely extensively on *Firearm Owners Against Crime v. Papenfuse*, 261 A.3d 467 (Pa. 2021), which they contend is "analogous, both procedurally and substantively," to this case. In *Papenfuse*, our Supreme Court considered whether three lawful gun owners and Firearm Owners Against Crime (FOAC) had individual and associational standing to seek pre-enforcement review of local gun control ordinances. The Supreme Court applied "the traditional substantial-direct-immediate test for standing" and held that the individuals had standing because the City of Harrisburg was actively enforcing the ordinances, causing the gun owners to have to choose between complying with the ordinances and forfeiting their rights, violating the ordinances by exercising their rights, or not living in or commuting to the city. *Id.* at 487. The Court also concluded that because the individual gun owners who had standing were all members of FOAC, FOAC had associational standing to represent them in challenging the ordinances. *Id.* at 488.

We conclude, however, that *Papenfuse* is distinguishable from this case in a key respect. Unlike Provider Petitioners in this case, the individual gun owners in

9

*Papenfuse* who were members of FOAC did *not* have an administrative remedy that they were required to exhaust. Here, RCPA's claims are identical to its members' claims, and its members have not yet exhausted their administrative remedies.

RCPA and Individual Petitioners also allege with respect to RCPA's standing that "[t]he most vulnerable DHS[] program beneficiaries are those whose medical complexity and behavioral issues require 1:1 supervision. . . . It is with respect to these most vulnerable beneficiaries that the new reimbursement system is most deficient." Pet. for Rev. ¶ 16. However, RCPA represents *providers* of CPS services, *not* individuals who receive CPS services. *See id.* ¶ 2 (averring that "RCPA provider members offer mental health, drug and alcohol, intellectual and developmental disabilities, children's, brain injury, medical rehabilitation, and physical disabilities and aging services, through all settings and levels of care"). Thus, RCPA cannot rely on the alleged harm to individuals who receive CPS services to establish its associational standing. *See Pa. Soc. Servs.*, 699 A.2d at 810 (stating that, to establish standing, an association must allege a substantial, immediate, and direct injury to *one of its members* as a result of the challenged action).[5]

---

[5] RCPA and Individual Petitioners also argue that "RCPA members do not have an adequate administrative remedy because [the] BHA lacks jurisdiction to award damages or to enter an injunction," Pet'rs Br. at 11, apparently attempting to relitigate the issue of whether Provider Petitioners and other RCPA members have an adequate administrative remedy, *see id.* at 19-21. However, on March 7, 2024, this Court denied RCPA and Individual Petitioners' motion to submit additional evidence on this issue, concluding that the availability of damages before the BHA is irrelevant to the question of whether the available administrative remedy is adequate, because the Petition for Review seeks declaratory and injunctive relief *only*. *See* Cmwlth. Ct. Order, 3/7/24, at 2 (noting that, in *RCPA II*, "the Supreme Court emphasized that the BHA has the authority to determine whether the challenged rate notice is an unpromulgated regulation or otherwise violates state or federal laws, which is the precise relief" RCPA and Individual Petitioners seek in their Petition for Review) (citing *RCPA II*, 283 A.3d at 268). In any event, our Supreme Court has
**(Footnote continued on next page…)**

Because our Supreme Court has concluded that Provider Petitioners (which are members of RCPA) have an available administrative remedy that they were required to exhaust, and some of those providers are still litigating their claims before the BHA, we conclude that RCPA "lacks standing to substitute itself for specific members having individual . . . claims." *State Mental Hosp.*, 520 A.2d at 913; *see Pa. Higher Educ.*, 617 A.2d at 95; *Rehab. & Cmty. Providers*, slip op. at 8-9 n.15.[6]  Therefore, we sustain DHS's Preliminary Objection challenging RCPA's standing.

## 2. Individual Petitioners' Standing

Next, DHS asserts that Individual Petitioners lack standing because they fail to allege direct harm as a result of the change in reimbursement rates.  DHS contends that Individual Petitioners have not been harmed because they continue to receive CPS services and any potential or hypothetical harm that may be suffered by their provider is not a substantial, direct, and immediate interest so as to confer standing.

---

already determined that Provider Petitioners have an adequate administrative remedy under the facts of this case.  *See RCPA II*, 283 A.3d at 271-72.

[6] This Court reached a similar conclusion as to RCPA in *Rehabilitation & Community Providers*:

> Because of the need for factual development at the administrative level to resolve [the provider's] claim before DHS, it follows we should decline to exercise our equitable jurisdiction over [RCPA].  *See* [*State Mental Hosp.*], 520 A.2d at 912-13. In [*State Mental Hospital*], this Court reasoned that because members of the association were actually pursuing their administrative remedies, it would be premature for this Court to act on the association's claim before the agency completed its review.  *See id.*  Although [the provider] has not yet appealed to DHS, *we agree that because* [*the provider*] *has an available, adequate administrative remedy, we must also decline* [*RCPA's*] *premature invitation to exercise our equitable jurisdiction.  See id.*

*Rehab. & Cmty. Providers*, slip op. at 17 (emphasis added).

11

To the extent Individual Petitioners contend that their provider might cease operations or that they might have to change providers, DHS asserts that these allegations are too speculative to confer standing.

With regard to Individual Petitioners' standing, RCPA and Individual Petitioners aver:

> Mr. Schwartz and Mr. Brett have standing as individuals who receive DHS[] services through [Associated Production Services, Inc.] Mr. Schwartz and Mr. Brett will lose the opportunity to enjoy supported employment (and the economic benefits of their remuneration) because the difference between the rates set in the new reimbursement system and the reasonable and necessary costs to provide services to Mr. Schwartz and Mr. Brett is approximately 7%; a difference that is not sustainable by their service provider.

Pet. for Rev. ¶ 14.

This Court recently considered the same standing claim in *Rehabilitation & Community Providers*, which involved two of the same individual petitioners, Mr. Schwartz and Mr. Brett, as in this case. There, we concluded that even though the individual petitioners did not have an available administrative remedy, they lacked standing because any factual questions relating to whether they would lose their CPS services due to DHS's new reimbursement system "'significantly overlap[s] with one of the issues pertaining to the [p]roviders, i.e., whether the [fees] set by DHS are so insufficient that the [p]roviders can no longer supply their services'" and, therefore, "'[DHS] will likely have to address that issue when adjudicating the [p]roviders' claims'" before the BHA. *Rehab. & Cmty. Providers*, slip op. at 19-20 (quoting *RCPA II*, 283 A.3d at 274 (Dougherty, J., concurring)). This Court further explained:

12

*The instant petition for review parallels the [P]etition for [R]eview in [RCPA II].* With respect to the [i]ndividual [p]etitioners before this Court, to quote our Supreme Court, "there may be factual issues surrounding threshold issues such as standing" of the [i]ndividual [p]etitioners. *[RCPA II]*, 283 A.3d at 272 n.19 (acknowledging the [I]ndividual [P]etitioners' arguments that they would lose access to services). To paraphrase the concurrence [in *RCPA II*], *any factual inquiry into [the i]ndividual [p]etitioners' standing significantly overlaps with the issue of whether DHS's fees are so insufficient that . . . [RCPA] can no longer provide their services to [them].*

*Id.*, slip op. at 20 (some internal citations omitted) (emphasis added). We noted that because of "the overlapping issues, further factual development before the agency best suited for the task is necessary. Following development of the record, DHS may then address, if raised, the standing of any petitioner, including [the i]ndividual [p]etitioners and [RCPA]." *Id.*, slip op. at 20 n.27. Therefore, we sustained DHS's preliminary objection challenging the individual petitioners' standing on that basis. *Id.*, slip op. at 20.

We are persuaded by this Court's reasoning in *Rehabilitation & Community Providers*, as it involves virtually the same facts, parties, and arguments as the present case. *See Rehab. & Cmty. Providers*, slip op. at 12, 15 (noting that that case "is remarkably similar to [*RCPA II*]" and involves "nearly identical facts and parties" as *RCPA II*). Guided by *Rehabilitation & Community Providers* and Justice Dougherty's Concurring Opinion in *RCPA II*, we conclude that any factual inquiry into Individual Petitioners' standing would significantly overlap with the issues presently being decided in the provider appeals pending before the BHA. *See RCPA II*, 283 A.3d at 274 (Dougherty, J., concurring) ("Where the Provider[ Petitioners], RCPA, and the Individual[ Petitioners] jointly filed one [P]etition [for Review] making the same allegations, it is foreseeable that both the [BHA] and the

13

Commonwealth Court on remand might be tasked with evaluating the same issues on dual tracks.").

Therefore, as in *Rehabilitation & Community Providers*, we sustain DHS's Preliminary Objection challenging Individual Petitioners' standing.[7]

### Conclusion

Accordingly, because we conclude that RCPA and Individual Petitioners lack standing to maintain this action, we sustain DHS's Preliminary Objection challenging their standing and dismiss the Petition for Review.[8]

ELLEN CEISLER, Judge

---

[7] In *Rehabilitation & Community Providers*, this Court also observed:

> Although not binding on this Court, to the extent this Court may invoke [the doctrine of] primary jurisdiction *sua sponte*, [as suggested by Justice Dougherty's concurrence in *RCPA II*], we agree with [Justice Dougherty's] observations. *Mindful of DHS's regulatory authority and expertise over fee reimbursement, as well as the concerns of res judicata and premature or inconsistent rulings, we would alternatively dismiss [the p]etitioners' petition for review without prejudice on this ground.*

*Rehab. & Cmty. Providers*, slip op. at 21 n.27 (emphasis added).

[8] In light of our conclusion that the only remaining petitioners in this case lack standing, we need not address DHS's remaining Preliminary Objections.

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rehabilitation and Community : 
Providers Association, and : 
Westmoreland County Blind : 
Association, and Associated : 
Production Services, Inc., and United : 
Cerebral Palsy of Central Pennsylvania, : 
Inc. and Scott Howard Schwartz by and : 
through Theodore A. Schwartz, Co : 
Guardian, and Ryan Brett by and : 
through His Guardian Francis Brett, : 
             Petitioners : 
  : 
      v. : No. 543 M.D. 2019
  : 
Department of Human Services : 
Office of Developmental Programs, : 
             Respondents : 

# **O R D E R**

AND NOW, this 24th day of October, 2024, upon review of the Preliminary Objections to the First Amended Petition for Review filed by the Department of Human Services, Office of Developmental Programs, we hereby SUSTAIN the Preliminary Objection asserting that Rehabilitation and Community Providers Association, Scott Howard Schwartz, and Ryan Brett lack standing and DISMISS the First Amended Petition for Review.

 

ELLEN CEISLER, Judge